**Wayne Dillard CARVER, Plaintiff,**

v.

**KNOX COUNTY, TENNESSEE, et al.,
Defendants and Cross–Plaintiffs,**

v.

**Ned Ray McWHERTER, et al., Defendants and Cross–Defendants.**

**No. Civ. 3–86–299.**

United States District Court,
E.D. Tennessee, N.D.

March 17, 1989.

See also 753 F.Supp. 1370, and 753 F.Supp. 1398.

John E. Eldridge and Dean Rivkin, University of Tennessee Legal Clinic, Knoxville, Tenn., for plaintiff.

Richard T. Beeler, Knox County Law Director, Robert H. Watson, Sr., John Duffey, Knoxville, Tenn., for defendants and cross-plaintiffs.

David Himmelreich, Asst. Atty. Gen., Nashville, Tenn., for third-party defendants and cross-defendants.

## MEMORANDUM OPINION

JARVIS, District Judge.

This class action came before the court on March 6, 1989 for the trial of the following issues which had been bifurcated by previous order [see Doc. 103]: (1) the cause of the overcrowded conditions at the Jail and the Intake Center [1]; and (2) the appropriate injunctive relief [2]. After consideration of the pleadings, testimony and exhibits introduced at trial, the parties' briefs and applicable law, the court makes the following findings of fact and conclusions of law. Rule 52(a), Federal Rules of Civil Procedure.

### FINDINGS OF FACT

1. The court's findings of fact issued in its Memorandum Opinion of January 25, 1989 [see 753 F.Supp. at 1374–84] are hereby adopted by reference. See Rule 10(c), Federal Rules of Civil Procedure.

2. Since October, 1985, the State of Tennessee has permitted a progressively increasing number of TDOC-sentenced inmates to remain in county jails throughout the State of Tennessee. W. Jeff Reynolds, the current Commissioner of the Department of Correction, testified that there are approximately 2,300 TDOC-sentenced inmates incarcerated in county jails and work houses.

3. As a result of this policy and practice of the State of Tennessee, the county defendants have been forced to house a progressively increasing number of TDOC-sentenced inmates. As of the date of this hearing, the county defendants housed a total of 147 TDOC-sentenced inmates awaiting transport to TDOC facilities. Chief Kenneth Quindry testified that this number includes not only TDOC-sentenced inmates but also inmates whose parole has been revoked. More importantly, Chief Quindry testified that if all of the TDOC inmate population were removed from the Knox County jail facilities, then the overall inmate population would be below the TCI-rated capacity.

1. During the trial of this matter in August, 1988, the evidence was overwhelming that the presence of TDOC-sentenced inmates was (and continues to be) the primary cause of the overcrowded conditions at the Jail and the Intake Center and the court so found in its earlier Memorandum Opinion entered on January 25, 1989 [see 753 F.Supp. 1370, 1379]. Nevertheless, the state defendants contended during the status conference on February 21, 1989 that they had been denied an opportunity to present their proof on this issue. It is for that reason that the court heard further proof from both the state and county defendants on this issue.

2. The court notes that it has already ordered certain injunctive relief on February 24, 1989 as a result of the status conference held on February 21, 1989 [see Doc. 145]. In particular, the court ordered the State to remove 80 TDOC-sentenced inmates within 30 days from the date of the status conference. The court would emphasize that both the number of TDOC-sentenced inmates to be removed within this time frame and the time frame itself were suggested by the state defendants in their Plan to Address Crowding in Knox County Facilities [see Doc. 142]. It is important to emphasize this facet of the state defendants' proposed plan since the memo issued by Commissioner Reynolds to all Tennessee sheriffs on February 22, 1989 indicated, "This order was issued over the protest of the State of Tennessee and after the State made it clear that such an order would adversely affect the other 94 counties of the State." [See Ex. "A" to Doc. 152A]. In other words, this court did not arbitrarily choose the number of TDOC-sentenced inmates to be removed, nor the time frame within which the State must remove these prisoners; rather, the court simply chose the proposal made by the state defendants.

4. Commissioner Reynolds also testified that, prior to the earlier order of this court [*see* Doc. 145], the state defendants had taken no action to remove TDOC-sentenced inmates from the Knox County facilities, despite the fact that the state defendants have been aware of the overcrowded conditions and attendant problems at the Knox County Jail. Commissioner Reynolds further testified that the county defendants have no legal means to unilaterally reduce the number of TDOC-sentenced inmates in their custody.

5. The court finds, therefore, that the county defendants cannot alleviate the unconstitutionally overcrowded conditions at the Jail and the Intake Center without the State removing some of the TDOC-sentenced inmates and parole violators from those facilities.

6. Since the entering of a federal court order by Judge Thomas A. Higgins in December, 1985 limiting the number of inmates who could be accommodated in the Tennessee State Prison System, Commissioner Reynolds testified that the state defendants have only added 300 beds to the total available bed space in the state correction system. In fact, there have only been 300 beds added since 1981. Furthermore, under the current building program of the state defendants, the State of Tennessee at best will have a total deficit of over 1,000 beds, assuming that the total projected number of inmates required to be housed is correct. Commissioner Reynolds testified that, in other words, the State of Tennessee will always have "more prisoners than beds" under its current policy. The state defendants therefore plan to continue to house no less than 2,500 TDOC-sentenced inmates in county jails at least until the early 1990's. [*See* Tr.Exh. 2]. In spite of this increasingly critical situation, Commissioner Reynolds testified that he was aware of no "emergency measures" being taken by the TDOC.

7. The state defendants' expert witness, Norman Cox, admitted in his deposition that the policy and practice of the State of Tennessee in allowing TDOC-sentenced inmates to "back up" and remain in local jails does not comport with good corrections policy. [*See* Doc. 153, pp. 106–07]. Cox did, however, opine that the practices and procedures established by the State of Tennessee and the TDOC since October, 1985 comport with good corrections policy; however, this opinion has been rendered without a review of the solutions and practices adopted by the State of Tennessee and did not include a review of current capacity needs versus projections of future capacity needs. [*See id.*, p. 81; pp. 109–112]. Finally, Cox's testimony did not include any opinion as to the total projected needs of the State of Tennessee, nor was he able to render an opinion regarding whether the State of Tennessee's building program would be adequate in the future. [*See id.*, pp. 81–83].

8. All of the relevant evidence and credible testimony presented to the court at both hearings, *i.e.*, during August, 1988 and March, 1989, clearly show that if all TDOC-sentenced inmates and inmates whose parole has been revoked were removed from the Jail and the Intake Center, these two facilities would be within their TCI-rated capacity. This, in turn, would alleviate the unconstitutional conditions now existing in the Jail.

9. As a result of the backlog of TDOC-sentenced inmates in the Knox County jail facilities, and further as a result of the State program for payment to local jails for the housing of TDOC-sentenced inmates, Harry Brooks, Administrative Assistant to the Sheriff, testified that the Knox County Sheriff's Department has experienced a shortfall in projected revenues of approximately $1,000,000.00 for fiscal year 1988–89. Because of this, the Knox County Sheriff's Department has reduced expenditures in other areas of the Department's budget, including expenditures in law enforcement and personnel. Brooks also testified that the Knox County Sheriff's Department has been paid an average of $13.91 per day by the State for housing state inmates during the first six months of the 1988–89 fiscal year. However, it presently costs Knox County $36.57 per day to house a prisoner.

## CONCLUSIONS OF LAW

1. The court's conclusions of law issued in its Memorandum Opinion of January 25, 1989 [*see* 753 F.Supp. at 1385–94], are hereby adopted by reference. *See* Rule 10(c), Federal Rules of Civil Procedure.

2. The court concludes that the policy and practice of the state defendants in allowing TDOC-sentenced inmates to remain in the Jail and the Intake Center for extended periods of time is the proximate cause of the unconstitutional conditions prevailing at these facilities. Accordingly, the state defendants will be required to remove an additional number of TDOC-sentenced inmates as set forth more specifically *infra*.

3. The court concludes that the only adequate and complete remedy available to resolve the unconstitutionally over-crowded conditions at the Jail and Intake Center is for the state defendants to remove from the custody of the county defendants such additional TDOC-sentenced inmates until the overall inmate population is reduced to no more than the TCI-rated capacity in both facilities. The TCI-rated capacity for the Jail is 228 or less and the capacity for the Intake Center is 127 or less. Because the court has already ordered the state defendants to remove 80 TDOC-sentenced inmates within 30 days from February 21, 1989, *i.e.*, on or before March 23, 1989, the court will require the state defendants to remove the additional TDOC-sentenced inmates on or before May 30, 1989. For each additional TDOC-sentenced inmate incarcerated in any of the Knox County jail facilities, the state defendants will have to "simultaneously"[3] remove a TDOC-sentenced inmate from the above facilities.

4. Although the court has imposed a limit on the number of inmates to be housed at each facility in accordance with the TCI-rated capacity, the court recognizes that it will be necessary to occasionally house more inmates than the TCI-rated capacity. Accordingly, the court will allow the Knox County jail facilities to exceed the TCI-rated capacity by fifteen percent (15%), but only for no more than five (5) consecutive days or ten (10) days out of any thirty (30) days.

5. The drunk tank at either the Jail or the Intake Center shall not house more than sixteen (16) inmates at any one time and shall not house any inmate for more than forty-eight (48) hours. Furthermore, no inmate shall be housed in either drunk tank for more than two (2) days out of any thirty (30).

## EPILOGUE

Finally, the court would note, as did the learned Judge R. Allan Edgar in *Roberts v. Tennessee Department of Correction*, Civ. 1–89–136 (E.D.Tenn., March 14, 1989), that the State "... has raised the spectre of mass release of State prison inmates if it is required to take more than a certain number of TDOC-sentenced inmates ..." from Knox County jail facilities. *Id.*, slip op. at 18. This court, like Judge Edgar, is convinced that the state defendants can and will find the means to manage its inmate population whereby a mass release of inmates will not be necessary. For example, Commissioner Reynolds testified that there were approximately 200 beds available across the state in county facilities in which TDOC-sentenced inmates could be housed. Nevertheless, the court believes that the state defendants have interjected this alleged state-wide issue of "mass release of inmates" in an attempt to have this court make a declaratory judgment on an issue that is purely one of state concern and one that is not, therefore, a federally justiciable issue. A federal court of this district or of any district should not be confronted with the impossible task of solving the over-crowded condition of the prisons and jails

---

**3.** As discussed during trial on March 6, 1989, the word "simultaneously" as used both in this opinion and accompanying Order, as well as the Order entered on February 24, 1989 [*see* Doc. 145] shall be defined as follows: The Knox County Sheriff or his designee shall notify Howard Cook or his designee of the receipt of any newly-sentenced TDOC inmate as defined in this court's order of February 24, 1989 [*see* Doc. 145, p. 2]. Within three (3) working days following receipt of such notification, the state defendants shall remove from one of the Knox County jail facilities the TDOC-sentenced inmate with the earliest sentence effective date. The county defendants shall deliver said inmate to the physical custody of the state defendants.

**1398**

of the entire state. This is the State's responsibility. All this court can and should do in this particular case is to order the State to remove its inmates from the Knox County jail facilities to eliminate the unconstitutionally overcrowded conditions here. Thus, if the State sees fit to release these prisoners because it cannot constitutionally accommodate them, this will be the State's decision—it will not be the decision of this court. State officials must answer to the minimum constitutional requirements of penal incarceration, and the state defendants must further answer to the people of this state if they fail in this duty. Moreover, the State must answer to the people if it chooses to turn criminals out of prison before they have paid the penalties imposed upon them by law.

Furthermore, the United States District Court in Nashville has seen fit to supervise the operations of the state-owned and operated prisons particularly with reference to prison population capacities. This case involves only the conditions existing in the Knox County jail facilities. It would amount to sheer folly to transfer every case of this nature to a judge in Nashville, just because state prisoners are involved. Such a move would not solve the problem, but only delay justice. To say that the venue of such a case as this and others like it should go to one judge 200 miles away so as to avoid inconsistency in the handling of state prisoners misses the point. The point is and should be that certain prisoners in the Knox County Jail are entitled to relief now. The Sheriff of Knox County is entitled to relief from this liability now. *Moving this case will not change the facts.* It will only cause undue delay. While the state needs and wants a delay, it can be readily seen from the history of lack of planning and construction of prisons over the last ten years that the state has received more delay than it is entitled to. The system has apparently now reached its day of reckoning, and this is not the fault of the Federal Judiciary.

Order accordingly.

